**FILED**
**Jun 29, 2022**
**07:15 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **PATRECE EDWARDS-BRADFORD,** ) | **Docket No.: 2021-08-0418** |
| **Employee,** ) | |
| **v.** ) | |
| **KELLOGGS USA, LLC,** ) | **State File Number: 45567-2019** |
| **Employer,** ) | |
| **And** ) | |
| **OLD REPUBLIC INSURANCE CO.,** ) | **Judge Deana C. Seymour** |
| **Carrier.** ) | |

---

## COMPENSATION ORDER

---

The Court held a Compensation Hearing on June 8, 2022.[1] Ms. Edwards-Bradford sought permanent disability benefits for an injury arising from an alleged work-related assault. Kelloggs argued that Ms. Edwards-Bradford was not physically assaulted on the job. Further, it contended that she did not satisfy her burden of proving the compensability of her injury by a preponderance of the medical evidence. For the reasons below, the Court denies Ms. Edwards-Bradford's claim.

### History of Claim

Ms. Edwards-Bradford worked for Kelloggs on June 5, 2019, when she claimed a co-worker assaulted her to get her to move to a different machine. According to Ms. Edwards-Bradford, the co-worker repeatedly elbowed her in the back, requiring her to hold onto a crank to keep from falling. Then, the co-worker beat on her hands to make her fall. She said the pain from this incident began four days later, at which time she reported the injury.

Kelloggs conducted an investigation, which suggested that the altercation Ms. Edwards-Bradford described did not occur. According to witnesses, the altercation was verbal but not physical.

---

[1] The initial Dispute Certification Notice listed temporary disability benefits as an issue, but Ms. Edwards-Bradford did not pursue these benefits at the hearing.

Despite the investigation findings, Kelloggs provided a panel of physicians, from which Ms. Edwards-Bradford selected neurosurgeon Dr. Fereidoon Parsioon.

Dr. Parsioon's first office note stated that Ms. Edwards-Bradford had no radicular pain and a negative straight leg raise test bilaterally. He ordered an MRI, which showed chronic, degenerative findings. Based on these findings, Dr. Parsioon concluded that her pain was muscular, and he did not recommend surgery. He ordered physical therapy and released her at maximum medical improvement with no restrictions or impairment on September 16, 2019, because she had no "anatomical changes as a result of this minor injury that she had at work."[2]

Ms. Edwards-Bradford continued to have back problems, so Kelloggs provided a new panel, from which she selected orthopedic surgeon Dr. Sam Murrell. She told Dr. Murrell that she had occasional pain and numbness down her right leg but most of her complaints involved her back. Dr. Murrell noted a negative straight leg raise test and mentioned that her MRI results looked degenerative. He stated, "While her symptoms developed after her work injury there does not appear to be a discreet [sic] injury which I would attribute to the altercation she describes." However, he diagnosed her with low-back pain after a work injury, ordered physical therapy, and treated her with medication and an epidural steroid injection.

When that treatment did not relieve her symptoms, Ms. Edwards-Bradford asked Dr. Murrell to refer her for chiropractic care. Dr. Murrell agreed and placed her at maximum medical improvement on May 6, 2020, after she completed her chiropractic treatment.[3] He released her to full-duty work with no permanent restrictions or impairment.

Then, in September 2020, Ms. Edwards-Bradford obtained an independent medical evaluation with Dr. Apurva Dalal.

During his evaluation, Dr. Dalal noted a positive straight leg raise on the right and altered sensation in the L4-L5 and L5-S1 distribution on the right lower extremity. He diagnosed degenerative lumbar stenosis with radiculopathy. In his report, he stated, "the work-related injury which this patient sustained as she explained to us has caused her to have back pain and radiculopathy. This patient did not have any of these clinical signs and symptoms prior to this work-related injury." He assigned a seven-percent impairment rating to the body under Table 17-4 of the AMA Guides to the Evaluation of Permanent

---

[2] Dr. Parsioon first released her from care with no restrictions or impairment in July 2019, after receiving a letter from the adjuster advising that Ms. Edwards-Bradford was involved in a motor vehicle accident and that Kelloggs' investigation found that no physical altercation took place. However, he later saw her on two other occasions.

[3] Before releasing Ms. Edwards-Bradford from care, Dr. Murrell noted several times that she would not consider surgical intervention but her symptoms were improving with chiropractic treatment.

Impairment. He also recommended that Ms. Edwards-Bradford avoid bending, pulling, pushing, twisting, and lifting more than fifteen pounds.

Dr. Dalal testified that Ms. Edwards-Bradford's degenerative arthritis predisposed her to an injury. Therefore, he concluded that "she had what we call an aggravation of preexisting degenerative arthritis due to her work-related injury." In Dr. Dalal's opinion, the work injury "precipitated her pre-existing arthritis to make it symptomatic." He also responded in the affirmative when asked if "the cause of the issues and symptoms that she was treating with [sic] greater than 50 percent because of the work injury."

Although Dr. Dalal testified on cross-examination that he believed he reviewed Drs. Parsioon's and Murrell's records before examining Ms. Edwards-Bradford, the records were not part of his file and were not referenced in his report. In addition, Dr. Dalal's testimony suggested that Ms. Edwards-Bradford was not reporting radicular symptoms at the time of his evaluation, as her symptoms were improving by that time. Per his report, she rated her back pain but noted that her leg pain was "on and off approximately 2-3 times per week depending on her activity level."

In July 2021, Ms. Edwards-Bradford returned to Dr. Murrell with recurrent back and right leg pain. Dr. Murrell's office notes suggested that her pain returned four months earlier when she went back to work for Kelloggs.[4] Her straight leg raise test was negative bilaterally. He prescribed medication, ordered an updated MRI, and referred her to her chiropractor.

On follow-up the next month, Dr. Murrell reviewed her MRI and concluded that it was not markedly changed from earlier studies and continued to show degenerative changes. Once again, her straight leg raise test was negative bilaterally. Dr. Murrell recommended another epidural steroid injection, but it is unclear if the injection was performed. She did not return to Dr. Murrell after this visit.

At the hearing, Ms. Edwards-Bradford denied any lower-back injuries or treatment before the work incident. However, she admitted to seeing a chiropractor for soreness in her upper back and shoulders in the years leading up to her work injury.

Ms. Edwards-Bradford testified that she continues to suffer from back pain, muscle spasms and tingling that affect her ability to perform her daily activities. Completing chores is difficult, and she can no longer walk or ride in a car for long periods. Her symptoms also affect her sleep.

---

[4] Kelloggs terminated Ms. Edwards-Bradford in May 2020 but later reinstated her after a union appeal. She continues to work for Kelloggs in the same position she held at the time of the work incident.

In addition, she relied on Dr. Dalal's deposition testimony to show her work-related back injury resulted in permanent impairment and restrictions. She argued that his opinions on causation and impairment overcame the presumptions granted to Drs. Parsioon and Murrell as her treating physicians. She also argued that Dr. Parsioon never actually treated her after receiving the adjuster's letter in July 2019 and should not be considered an authorized treating physician.

Kelloggs countered that Ms. Edwards-Bradford failed to prove the compensability of her claim by a preponderance of the evidence. First, it relied on the testimony of its representative, Belaji Kamalakannan, to argue that no physical altercation took place on June 5, 2019. Mr. Kamalakannan, Kelloggs' current health and safety manager, testified that he did not hold this position on the date of injury and did not participate in Kelloggs' investigation. Rather, he reviewed the statements of two witnesses who were interviewed after the altercation. According to Mr. Kamalakannan, the witnesses saw no physical altercation or touching. He also testified on cross-examination that the two witnesses continued to work for Kelloggs.

Further, Kelloggs contended that the medical proof failed to show a compensable injury or support a finding of permanent impairment. It relied on the opinions of Drs. Parsioon and Murrell and the presumptions associated with treating physicians' causation and impairment opinions to support its position.

**Findings of Fact and Conclusions of Law**

At a Compensation Hearing, the employee must prove by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2019). The employee must show that her injury or condition "arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

Ms. Edwards-Bradford's burden requires proof "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). She must prove this "to a reasonable degree of medical certainty." Tenn. Code Ann. § 50-6-102(14)(C). In addition, "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E).

Here, Kelloggs argued that Ms. Edwards-Bradford failed to meet her burden in two ways. First, it contended that she failed to prove a physical altercation occurred on June 5, 2019, that resulted in her injury. Second, she failed to rebut the presumption of correctness

4

granted to the causation and impairment opinions of her treating physicians under Tennessee Code Annotated section 50-6-102(14)(E) and 50-6-204(k)(7).

Considering Kelloggs' first contention, Ms. Edwards-Bradford credibly testified about the incident that led to her back symptoms. Kelloggs relied on the testimony of Mr. Kamalakannan to oppose Ms. Edwards-Bradford's description of the incident. However, he was not involved in the investigation. Moreover, his testimony hinged on the statements of two witnesses who were not present at the hearing, despite being named as witnesses on Kelloggs' witness list and continuing to work for Kelloggs. Based on this, the Court finds Ms. Edwards-Bradford's testimony about the incident more believable than Mr. Kamalakannan's testimony.

However, this does not end the inquiry. Drs. Parsioon and Murrell both determined that Ms. Edwards-Bradford's work incident did not cause any "anatomical change" or "discreet [sic] injury" when they reviewed her diagnostic tests. Instead, they both noted chronic, degenerative changes that were not caused by the work injury.

Ms. Edwards-Bradford relied on Dr. Dalal's testimony to rebut the presumption given to their causation opinions. Dr. Dalal testified that Ms. Edwards-Bradford's degenerative arthritis predisposed her to an injury, and he concluded that "she had what we call an aggravation of preexisting degenerative arthritis due to her work-related injury."

In cases where the employee alleges an aggravation of a preexisting condition, it is well settled that "evidence of a mere increase in pain caused by a work accident, with no accompanying evidence that the work accident advanced the severity of the pre-existing condition or caused an anatomic change in that condition, is insufficient to support a finding of compensability." *Barnes v. Jack Cooper Transp. Co.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 16, at *9 (Mar. 24, 2020). Further, for pain to constitute a compensable aggravation of a preexisting condition, there must be evidence that the pain itself was disabling. *Id*.

In the present case, Dr. Dalal testified that the work injury made Ms. Edwards-Bradford's preexisting arthritis symptomatic, but he did not discuss how the work injury advanced the preexisting condition or caused a new, distinct injury. In addition, it is unclear which imaging studies Dr. Dalal reviewed to determine that the work injury aggravated her arthritis. Without this discussion, the Court is unable to find that Dr. Dalal's causation opinion rebuts the presumption afforded to the causation opinions of Drs. Parsioon and Murrell.

Likewise, the Court is unable to find that Dr. Dalal's impairment opinion rebuts the presumption afforded to the impairment opinions of the treating physicians under Tennessee Code Annotated section 50-6-204(k)(7). Neither Dr. Parsioon nor Dr. Murrell assigned permanent impairment or restrictions. In contrast, Dr. Dalal testified that Ms.

Edwards-Bradford retained a seven-percent impairment rating and should avoid bending, pulling, pushing, twisting, and lifting more than fifteen pounds.

Dr. Dalal based his opinion on Ms. Edwards-Bradford's non-verifiable radicular complaints and pointed to a positive straight leg raise test and altered sensation in the L4-L5 and L5-S1 distribution on the right lower extremity. He also noted her lack of "clinical signs and symptoms" before her work injury.

Dr. Dalal relied on Table 17-4 of the Sixth Edition of the AMA Guides to the Evaluation of Permanent Impairment to arrive at his rating. The table applies when a disc herniation exists and the patient asserts non-verifiable radicular complaints at clinically appropriate levels at the time of examination.

Dr. Dalal's report and testimony suggest that Ms. Edwards-Bradford did not present with radicular symptoms at the time of his examination. When asked directly about whether she reported radicular symptoms during his examination, he testified that her symptoms were improving by the time of his evaluation. He noted that she still had pain but stated it had improved with treatment. A review of his report reveals that Ms. Edwards-Bradford rated her back pain but noted that her leg pain was "on and off approximately 2-3 times per week depending on her activity level." Dr. Dalal did not specifically mention that her radicular complaints were present at the time of her examination.

In addition, neither Dr. Parsioon nor Dr. Murrell noted a positive straight leg raise test over the course of their treatment, even when Dr. Murrell saw her after Dr. Dalal's evaluation. Moreover, Ms. Edwards-Bradford continues to work at Kelloggs in the same position she held at the time of the work incident.

Considering these facts, the Court finds that Ms. Edwards-Bradford did not rebut the presumption afforded to the causation and impairment opinions of Drs. Parsioon and Murrell by a preponderance of the evidence. Thus, the Court holds that she did not prove entitlement to the requested permanent disability benefits.

**IT IS ORDERED** as follows:

1. Ms. Edwards-Bradford's claim against Kelloggs and its workers' compensation carrier is dismissed with prejudice against its refiling.

2. Costs of $150.00 are assessed against Kelloggs under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022), to be paid to the Court Clerk within five days of this order becoming final.

3. Kelloggs shall prepare and file a statistical data form (SD2) with the Court Clerk within ten business days of the date of this order under Tennessee Code Annotated

section 50-6-244.

4. Unless appealed, this Order shall become final in thirty days.

**ENTERED on June 29, 2022.**

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Dr. Apurva Dalal's deposition transcript, including exhibits to the deposition
2. Dr. Sam E. Murrell's deposition transcript
3. Employer's Submission of Medical Records to be Presented as Evidence at the Compensation Hearing (Dr. Fereidoon Parsioon)
4. Employer's Submission of Medical Records to be Presented as Evidence at the Compensation Hearing (Dr. Sam E. Murrell)
5. Form C-42 Employee's Choice of Physician (Dr. Fereidoon Parsioon)
6. Form C-42 Employee's Choice of Physician (Dr. Sam E. Murrell)
7. First Report of Work Injury
8. Petition for Benefit Determination
9. Termination letter dated May 1, 2020

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice filed June 14, 2021
3. Hearing Request
4. Scheduling Order
5. Employee's Motion for Extension of Time and Resetting of ADR and Trial Date
6. Amended Scheduling Order
7. Dispute Certification Notice filed May 19, 2022
8. Employer's Submission of Medical Records to be Presented as Evidence at the Compensation Hearing (Dr. Sam E. Murrell)
9. Employer's Submission of Medical Records to be Presented as Evidence at the Compensation Hearing (Dr. Fereidoon Parsioon)
10. Notice of Filing Deposition of Dr. Sam E. Murrell, III
11. Employer's Pre-Hearing Statement for Compensation Hearing
12. Employee's Witness and Exhibit List

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on June 29, 2022.

| Name | Certified Mail | Via USPS | Via Email | Service sent to: |
|------|----------------|----------|-----------|------------------|
| Christopher Taylor, Employee's Attorney | | | X | ctaylor@taylortoon.com |
| Thomas Smith, Employer's Attorney | | | X | tsmith@spicerfirm.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*

For notices of appeal filed on or after July 1, 2022.



<u>Compensation Order Right to Appeal</u>:

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board. *See the Rules governing the Workers' Compensation Appeals Board on the Bureau's website*

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*